IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ALICE CULTON and SHIRLEY C. BELCHER | ) ) ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) ) ) | CIVIL ACTION NO. H-04-3001 |
| SAKS INCORPORATED and KONE, INC. and LIBERTY MUTUAL INSURANCE GROUP | ) ) ) ) ) | |
| Defendant | ) | |

## **MEMORANDUM AND ORDER**

Before the court is the motion for summary judgment brought by a defendant, Saks Incorporated (Saks), against a second defendant, Montgomery KONE, Inc. (Kone). Doc. 33 and duplicate entry Doc. 31.. Kone responded. Doc. 37. Both parties filed further replies. Docs. 38, 40, 45, 46, 47, 51, and 52. Because Saks did not place the escalator into the stream of commerce, Saks' motion is DENIED. Doc. 33 and Doc. 31.

**BACKGROUND**

Alice Culton and Shirley C. Belcher were injured while riding an escalator. Saks is allegedly liable as the operator of the store in which the escalator was located. Kone is allegedly liable as the company responsible for servicing the escalator.

Saks seeks indemnification from Kone under Tex Civ. Prac. & Rem. § 82 ("Section 82"). Saks argues that it is a "seller" and that Kone is a "manufacturer," as those terms are

defined in Tex Civ. Prac. & Rem. 82.001.  To support its arguments, Saks submitted an agreement between the parties as well as repair and maintenance records.  Doc. 33, Exh. A and B.  Kone did not offer contradictory evidence.  Kone disputes only the legal interpretation of the evidence before the court.

**LEGAL STANDARD**

A party seeking summary judgment must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, showing that no genuine issue of material fact exists and explain why it is is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party need not present its own evidence, but may identify genuine issues of fact raised by the evidence produced by the moving party to survive summary judgment.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

Section 82 defines a "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof."  Tex. Civ. Prac. & Rem. § 82.001(3).  An entity cannot be a "seller" unless it places the defective product in the "stream of commerce."  Additionally, it must be "engaged in the business" of doing so.

The court rejects Saks' attempt to remove the question of whether an entity placed a product in the stream of commerce from the definition of a "seller."  Saks apparently argues that the phrase, "for any commercial purpose" means that its use of the escalator in a commercial building establishes it a seller for the purpose of Section 82.  However, the phrase, "for any commercial purpose" appears as a clause that determines under which conditions a seller distributes or otherwise places a product in the stream of commerce.  It does not create an

alternate method of classifying an entity as a "seller."  Thus, an entity's use of a product for a commercial purpose does not do away with the requirement that it also distribute or otherwise place that product in the stream of commerce before a court may classify that entity as a "seller."

Because Section 82 does not define "stream of commerce," this court must rely on other sources of authority to determine the scope of Section 82.  "In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the common law or former statutory provisions, including laws on the same or similar subjects[.]"  Tex. Gov't Code § 311.023(4).  Accordingly, a court presumes "that the Legislature acted with knowledge of the common law and court decisions" when it enacted a statute.  *Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex. 1999) (citing *McBride v. Clayton,* 166 S.W.2d 125 (Tex.Com.App. 1942) opinion adopted by the Supreme Court).  The *McBride* decision relied on opinions issued before a new statute regarding corporations had been enacted to define a term of art contained in that new statute:  "[i]n applying this statute to the facts before us we must assume that in the use of the term insurable interest the Legislature intended it to mean what the courts of this state had theretofore said it meant."  *McBride,* 166 S.W.2d at 128.  Like the phrase "insurable interest," "stream of commerce" is a term of art analyzed in roughly the same way by courts in all American jurisdictions.  Because the Legislature enacted Section 82 long after courts established the meaning of "stream of commerce," this court presumes that the Legislature adopted their definition of the "stream of commerce" when it incorporated that term of art in the definition of a "seller."[1]

---

[1] If the Legislature had defined what acts constitute placing a product in the stream of commerce, then cases decided before 1993 would lose much of their persuasive power, just as common law doctrines governing who must indemnify whom lost their effect when the Legislature enacted Section 82.  See, *Fitzgerald v. Advanced Spine Fixation Systems, Inc.* 996 S.W.2d 864, 868 (Tex. 1999) ("the state of the common law sheds little light on what the Legislature intended when it defined 'seller' in section 82.001(3), and required manufacturers to indemnify sellers in section 82.002(a).").  Consequently, the court rejects Saks' attempt to limit its analysis to cases decided after 1993.

To enter the stream of commerce, "the product must be released in some manner to the consuming public." *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex. 1978). In *Armstrong,* the allegedly defective tire had not been released to the consuming public because it was installed on an automobile used only for the purpose of testing that automobile model. When applying the same legal standard that Texas courts use to determine whether a product has been placed in the stream of commerce, a New Jersey court summarized the facts of several cases that illustrate the distinction between a product that was placed in the stream of commerce and a product that was merely used to further a larger commercial purpose:

> Roadway's use of the retread tire is analogous to the dentist's use of the hypodermic needle in *Magrine,* the motel owner's use of cooking utensils in *Ranalli,* and the bowling alley's use of the bowling ball in *Dixon.* In each case, the owner of the defective item was engaged in a larger business enterprise to which the item was only incidental. The owner was not engaged in commercially selling a defective product to consumers and, hence, holding the owner strictly liable would not benefit the public by exerting pressure to make the product safer.

*Becker v. Tessitore,* 812 A.2d 369, 380 (N.J.Ct.App. 2002).

Because the *Becker* court applied the same legal analysis that courts in Texas would apply, this court finds its examples particularly persuasive when attempting to distinguish between products that a business uses incidentally and those that it places in the stream of commerce.

**ANALYSIS**

Saks is not a "seller" as the term is defined in Tex. Civ. Prac. & Rem. § 82.001(3) because it did not place the escalator in the stream of commerce.[2]  *Armstrong* requires Saks to release the escalator to the consuming public.  For Saks to prevail on its legal theory, Saks must

---

[2]Accordingly, cases that determine how to analyze problems arising from defective products that are in the stream of commerce have no relevance to this decision.  *See e.g., General Motors Corp. v. Hudiburg Chevrolet, Inc.* --- S.W.3d ----, 2006 WL 741552 (Tex.), 49 Tex. Sup. Ct. J. 464 (March 24, 2006).

4

introduce undisputed evidence that it engages in the business of releasing either its interest in or its control of the escalator to the consuming public. However, Saks did not introduce any evidence that it engages in the business of releasing its escalators to the consuming public on either a temporary or a permanent basis.

The fact that customers of Saks ride the escalator between the floors on which Saks releases other products to the consuming public establishes (1) the escalator as an incidental portion of a larger business enterprise and (2) Saks as the consumer of the escalator, not the seller.

As a consumer of the escalator who never placed the escalator into the stream of commerce, Saks cannot obtain indemnification under Section 82 from Kone. Accordingly, Saks' motion for summary judgment is DENIED. Doc. 33 (and Doc. 31).

Furthermore, it is ORDERED that this case is referred to Magistrate Judge Stacy for a scheduling conference.

SIGNED at Houston, Texas, this 25th day of September, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE